### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OSCAR DANTZLER**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE, *et al.*,** <br><br> Defendants. | Case No. 1:20-cv-01505 (TNM) |

### <u>MEMORANDUM OPINION</u>

Plaintiff Oscar Dantzler, proceeding *pro se*, seeks a writ of mandamus against the Department of Justice, the Federal Bureau of Investigation, the Equal Employment Opportunity Commission, and various agency officials (collectively, "Federal Defendants"). He also sues the National Association for the Advancement of Colored People, its National President Derrick Johnson, and its Louisiana State Conference President Michael McClanahan (collectively, "NAACP Defendants"). Dantzler alleges that each set of Defendants failed to help him pursue his claims of discrimination and conspiracy. He seeks to compel them to aid him with those claims. The Federal Defendants and the NAACP Defendants separately move to dismiss. For the reasons explained below, the Court will dismiss the case.

### I.

According to his petition and supporting attachments, Dantzler began working as a bus driver in 1993 for the Tangipahoa Parish School District ("School District") in Louisiana. Pl.'s Pet. for Writ of Mandamus Exs. ("Pl.'s Exs.") at 1, ECF No. 1-1.[1] During his employment, he

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

claims he was "vocal" and spoke "out about discriminatory and unfair labor practices at the School District." *Id.* He applied for several promotions, but he was never selected. *Id.* Dantzler, a black male, claims that the School District discriminated against him based on his race and sex.[2] *Id.*

So Dantzler filed a charge with the New Orleans office of the EEOC in 2019. *Id.*; Pl.'s Pet. for Writ of Mandamus ("Pl.'s Pet.") at 4, ECF No. 1. The Louisiana Commission on Human Rights ("LCHR")[3] then informed Dantzler that they would handle his complaint. Pl.'s Pet. at 6. A few months later, the LCHR informed Dantzler that they found no violations by the School District. Pl.'s Exs. at 11. The LCHR provided Dantzler with a Right to Sue letter. Pl.'s Pet. at 8. The letter gave him an option to appeal his charge to the EEOC within 15 days or sue his employer within 90 days. Pl.'s Exs. at 11. Dantzler does not allege that he did either.

During the LCHR investigation, Dantzler sought legal representation from the NAACP, of which he is a member. *See id.* at 12–14; Pl.'s Pet. at 9. The NAACP declined to take up Dantzler's case. *See* Pl.'s Pet. at 9. Dantzler alleges this violates the NAACP's own bylaws. *See id.*

Next, Dantzler turned to the DOJ and FBI. *See id.* at 18; Pl.'s Exs. at 15–19. He sent letters requesting that those agencies start a Racketeer Influenced and Corrupt Organizations Act ("RICO") investigation. *See* Pl.'s Exs. at 15–19. He alleges that Louisiana Governor John Bel

---

[2] Dantzler has previously alleged wrongful termination and racial discrimination against some of the same defendants here, stemming from his termination from the police force. *See, e.g.*, *Dantzler v. EEOC*, 810 F. Supp. 2d 312 (D.D.C. 2011). The court ultimately dismissed three of Dantzler's suits for violating an order from the Eastern District of Louisiana enjoining Dantzler from filing documents without leave of the court or "upon a finding that his pleadings are neither frivolous nor vexatious." *Id.* at 319–20 (cleaned up).

[3] The LCHR is one of the EEOC's designated Fair Employment Practice Agencies and enforces state and local employment law. 29 C.F.R. § 1601.74.

Edwards, the NAACP, the EEOC, and the LCHR conspired to deprive him of his civil rights. *See* Pl.'s Pet. at 7–9. Dantzler explains that Edwards "is coming after him" because he ran as a Democratic candidate for governor of Louisiana in 2019, challenging Edwards' incumbency. *See id.* at 7. Dantzler did not receive responses from the Federal Defendants. *See id.* at 18.

Dantzler then sued here. He sued the Federal Defendants,[4] the NAACP Defendants, and others.[5] Only the NAACP Defendants and the Federal Defendants remain. Dantzler invokes several criminal statutes and constitutional provisions against them. *See, e.g., id.* at 11–13. His principal claims appear to invoke 28 U.S.C. § 1361 and the All Writs Act, 28 U.S.C. § 1651. *See* Pl.'s Pet. at 13–18, 22–24. The NAACP Defendants and Federal Defendants move to dismiss. Fed. Defs.' Mem. in Supp. of Mot. to Dismiss ("Fed. Defs.' Mot.") at 1, ECF No. 10-1; NAACP's Mem. in Supp. of Mot. to Dismiss ("NAACP's Mot.") at 1, ECF No. 5-2. The motions are ripe for disposition.[6]

---

[4] Along with the federal agencies already mentioned, Dantzler sued the following individuals in their official capacities: Attorney General Merrick Garland, FBI Director Christopher Wray, FBI Special Agent Bryan Vorndran, FBI Agents Does 1-5, Deputy Director of the EEOC's Houston District Office Travis Nicholson, Director of the EEOC's New Orleans Field Office Keith Hill, and Regional Attorney for the EEOC's Houston District Office Rudy Sustaita. *See* Pl.'s Pet. at 1–2. The Court dismissed Dantzler's suit against these Defendants in their personal capacities for failure to serve. *See* Order (Dec. 22, 2020), ECF No. 38. While Dantzler's petition states "Keith Hills" and "Ruby Sustaita," the Court refers to these Defendants by their names as presented in the Federal Defendants' motion. *See* Fed. Defs.' Mem. in Supp. of Mot. to Dismiss ("Fed. Defs.' Mot.") at 6, ECF No. 10-1. The Court also substitutes Merrick Garland for William Barr, former Attorney General, as a Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[5] The Court dismissed Defendants LCHR, Agents 1-5 of the LCHR, John Bel Edwards, Leah Raby, Desha Gay, and Christa David for failure to prosecute. *See* Order (Mar. 9, 2021), ECF No. 40.

[6] Although not relevant here, the Court notes that Dantzler appealed several of the Court's prior orders. *See* Notice of Appeal, ECF No. 34. The Court maintained jurisdiction despite Dantzler's appeal because he appealed non-appealable orders. *See* Min. Order (Nov. 13, 2020); *see also United States v. DeFries*, 129 F.3d 1293, 1302–03 (D.C. Cir. 1997) (explaining that a district court can maintain jurisdiction over a case when a party "takes an interlocutory appeal from a

## II.

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Fed. Defs.' Mot. at 1; NAACP's Mot. at 1–2. A plaintiff bears the burden of establishing the Court's jurisdiction over his claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If the plaintiff has not met that burden, his complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(1). When deciding a Rule 12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But the Court is "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). In deciding this motion, the Court "may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

The Court analyzes a complaint less stringently under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court treats as true the complaint's factual allegations and grants the plaintiff "all inferences that can be derived from the facts

---

non-appealable order"). The D.C. Circuit ultimately dismissed Dantzler's appeal for lack of jurisdiction. *See* USCA Order (Mar. 25, 2021), ECF No. 41-1.

alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).  The Court need

not, however, credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678

(cleaned up).

Dantzler is proceeding *pro se*.  His pleadings are accordingly construed liberally and

"held to less stringent standards than formal pleadings drafted by lawyers." *Abdelfattah v. DHS*,

787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "But

even a *pro se* complainant must plead 'factual matter' that permits [a] court to infer 'more than

the mere possibility of misconduct.'" *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82

(D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).  A court also must consider a *pro se* complaint

"in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole*

*Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (cleaned up).

### III.

Dantzler asks the Court to compel both sets of Defendants to take various actions.  *See*

Pl.'s Pet. at 21–24.  He mainly relies on two mandamus statutes as potential sources of

jurisdiction.

In 28 U.S.C. § 1361, Congress granted federal district courts "original jurisdiction of any

action in the nature of mandamus to compel an officer or employee of the United States or any

agency thereof to perform a duty owed to the plaintiff."  An "agency" is defined as "any

department, independent establishment, commission, administration, authority, board or bureau

of the United States or any corporation in which the United States has a proprietary interest." *Id.*

§ 451.  Mandamus may only issue when "(1) the plaintiff has a clear right to relief; (2) the

defendant has a clear duty to act; and (3) there is no other adequate remedy available to the

plaintiff." *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533

(D.C. Cir. 1983).  "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

Dantzler also relies on the All Writs Act, 28 U.S.C. § 1651.  In that Act, Congress provided that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a).  The All Writs Act "is most commonly invoked by a federal circuit court of appeals to issue a writ of mandamus to a district court judge, or by the Supreme Court to issue a writ to a lower court judge." *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011).  The D.C. Circuit has acknowledged that "it is firmly established that section 1651 does not expand the jurisdiction of a court." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984).  Rather, "the All Writs Act allows the Court to order a remedy only where subject matter jurisdiction already exists." *Carson v. U.S. Off. of Special Couns.*, 563 F. Supp. 2d 286, 288 (D.D.C. 2008).

In any case, "[i]t is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).  As the D.C. Circuit has explained, its "consideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  "[E]ven if the plaintiff overcomes all the[] hurdles" to show he is entitled to relief, "whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc).

The NAACP Defendants and the Federal Defendants argue that this Court lacks subject matter jurisdiction and that Dantzler has otherwise failed to state a claim. *See* NAACP's Mot. at 2; Fed. Defs.' Mot. at 6. The Court agrees. The Court considers each set of Defendants in turn.

**A.**

First, the NAACP Defendants. Dantzler seeks a writ of mandamus to compel the NAACP to investigate and represent him in his discrimination charge. *See* Pl.'s Pet. at 21–24. He cites 28 U.S.C. § 1361 and § 1651 as sources of jurisdiction. *See id.* at 13–14, 19. But neither statute supports Dantzler's claims.

The text is clear: Mandamus under § 1361 may only issue against "an officer or employee of the United States or any agency thereof." *Syngenta Crop Prot., Inc. v. Drexel Chem. Co.*, 655 F. Supp. 2d 54, 62 (D.D.C. 2009) (quoting 28 U.S.C. § 1361); *see also id.* ("Syngenta does not seek to compel 'an officer or employee of the United States or any agency thereof'—both Drexel and the AAA arbitration panel are private, not federal, entities." (quoting 28 U.S.C. § 1361)); *Choi*, 818 F. Supp. 2d at 84 (explaining that "§ 1361 is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch"). The NAACP is a private organization. Dantzler has not alleged otherwise. Indeed, he acknowledges that the "NAACP is a well recognize[d] Civil Rights organization." Pl.'s Pet. at 9. Mandamus under § 1361 thus cannot issue against the NAACP.

Even if mandamus could issue against the NAACP under § 1361, Dantzler has not shown that he is entitled to the extraordinary remedy. Dantzler asks the Court to order the NAACP to follow its own bylaws. *See, e.g.*, *id.* at 9, 23–24. But he does not articulate any basis for his right to relief. He states only that the NAACP "went against their own bylaws" and that he "strongly feel[s] that they owe plaintiff an explanation for refusing to help" him. Pl.'s Opp'n to

NAACP's Mot. to Dismiss at 2–3, ECF No. 23.  In any event, the Court is doubtful that any such authority exists.  It is generally not the role of a federal court to tell a private organization when and how to follow its own rules.  Because Dantzler has not met the threshold requirements for mandamus under § 1361, the Court "must dismiss the case for lack of jurisdiction." *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).

Dantzler also invokes the All Writs Act, 28 U.S.C. § 1651.  But this statute cannot confer subject matter jurisdiction here because, as explained, it "allows the Court to order a remedy only where subject matter jurisdiction already exists." *Carson*, 563 F. Supp. 2d at 288.  And Dantzler has not independently established jurisdiction.  He mentions several other federal laws and constitutional provisions in passing.  But he does not appear to bring claims under any.  For example, some of those laws, such as RICO, *see* 18 U.S.C. §§ 1961–1968, instead reflect the crimes he asks the DOJ and FBI to investigate, *see, e.g.*, Pl.'s Pet. at 23.  He therefore has not met his burden to establish the Court's jurisdiction over his claims.  *Accord Syngenta*, 655 F. Supp. 2d at 62 ("Because Syngenta has not established subject matter jurisdiction independent of . . . the All Writs Act, it cannot independently assert subject matter jurisdiction under [it].").

\*     \*     \*

If Dantzler's petition can be construed as raising other claims against the NAACP Defendants, none would survive dismissal.  For example, Dantzler appears to allege a conspiracy between the NAACP and Governor Edwards.  *See, e.g.*, Pl.'s Pet. at 9, 11, 13 (citing 42 U.S.C. § 1985(3)).  But he does not plead sufficient facts to support it.  The petition states only that the NAACP supported Edwards' candidacy and declined to represent Dantzler.  *See id.* at 9. Dantzler does not allege facts showing there was an agreement—a necessary requirement for a conspiracy claim.  *Cf. Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) ("Among other

things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: an

agreement to take part in an unlawful action or a lawful action in an unlawful manner." (cleaned

up)); *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 96 (D.D.C. 2019) ("To prevail on their

[§ 1985] claim, the Plaintiffs must show the existence of an agreement, or meeting of the minds,

between multiple parties to violate [their] civil rights." (cleaned up)), *aff'd*, 831 F. App'x 513

(D.C. Cir. 2020).

Dantzler's other one-off citations to various constitutional and statutory provisions would

likewise fail.  The NAACP is not a state actor, and Dantzler has not plausibly alleged that it

acted under the color of state law.  *See Amiri v. Gelman Mgmt. Co.*, 734 F. Supp. 2d 1, 3 (D.D.C.

2010) (concluding that plaintiff "fails to state a claim under § 1983" because "[n]othing in the

complaint suggests that Gelman [Management Company] is a state actor or acted in concert with

the District of Columbia"); *Daniels v. Union Pac. R.R. Co.*, 480 F. Supp. 2d 191, 196 (D.D.C.

2007) (explaining that "there can be no violation of the Constitution without state action—in this

case, action by the federal government or under color of federal law" and that "state action

requires that the party charged with the deprivation must be a person who may fairly be said to

be a state actor" (cleaned up)).  The Court need not accept Dantzler's conclusory allegations.

*See, e.g.*, Pl.'s Pet. at 12 ("Plaintiff alleges that at all times pertinent hereto, defendants were

person (s) [sic] acting under color of the law within the meaning and intent of 42 U.S.C.

[§] 1983.").[7]

---

[7]  The NAACP Defendants are also likely correct in asserting that Dantzler fails to allege
sufficient contacts to establish the Court's personal jurisdiction over Defendant McClanahan.
*See* NAACP Defs.' Mot. at 4–6.

9

**B.**

Dantzler also seeks writs of mandamus against the Federal Defendants.  *See* Pl.'s Pet. at 21–23.  For § 1361, the Federal Defendants—unlike the NAACP—are federal employees and agencies.  *See Syngenta*, 655 F. Supp. 2d at 62; *Choi*, 818 F. Supp. 2d at 84.  But Dantzler must still establish the three factors already outlined—that (1) he "has a clear right to relief," (2) that "the defendant has a clear duty to act," and (3) that "there is no other adequate remedy available to" him.  *Regan*, 709 F.2d at 1533.  He has not done so.  The Court will first address Dantzler's allegations against the DOJ and FBI, then his allegations against the EEOC.

**1.**

Dantzler asks the Court to compel the FBI and DOJ to investigate and prosecute his discrimination and conspiracy claims.  *See, e.g.*, Pl.'s Pet. at 13–18, 22–23.  But he does not allege any "clear duty to act."  Courts construe "duty" narrowly.  Mandamus will only issue to compel performance of a duty that is "clear and nondiscretionary."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

The U.S. Code provides that "[t]he Attorney General and the Federal Bureau of Investigation may investigate any violation of Federal criminal law involving Government officers and employees."  28 U.S.C. § 535(a).  The word "may" does not mandate a duty—it is inherently discretionary.  *Cf. MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 773 (11th Cir. 2020) ("Words in a statute must be interpreted according to their ordinary meaning and 'may' cannot, by any rendering, mean 'must.'").  "Under 28 U.S.C. § 535(a)," then, while "the FBI '*may* investigate' certain crimes involving a Government official or employee . . . it is not required to investigate every complaint filed."  *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010).

Dantzler argues that the Court should instead look to 28 U.S.C. § 535(b), which, in contrast, uses "shall." Pl.'s Opp'n to Fed. Defs.' Mot. to Dismiss at 8–9, ECF No. 25. That statute provides: "Any information, allegation, matter, or complaint witnessed, discovered, or received in a department or agency of the executive branch of the Government relating to violations of Federal criminal law involving Government officers and employees shall be expeditiously reported to the Attorney General by the head of the department or agency, or the witness, discoverer, or recipient, as appropriate . . . ." 28 U.S.C. § 535(b). The Court rejects Dantzler's reading. Section 535(b) mandates only *internal* reporting; it does not compel an investigation. *Accord Bailey v. Brandler*, 726 F. App'x 108, 109 (3d Cir. 2018) (holding that § 535 "does not require an investigation"). Dantzler is thus left with the discretionary language of § 535(a), which is an inappropriate basis for mandamus.

The Court also cannot compel DOJ to initiate a prosecution. The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *accord Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965) (per curiam) ("It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General."). So "[m]andamus will not lie to control the exercise of this discretion." *Powell*, 359 F.2d at 234.

## 2.

The Court turns to Dantzler's claims against the EEOC, which are less clear. He mentions a "[m]andatory duty" on the part of the EEOC. Pl.'s Pet. at 4. But he does not appear to pray for any relief against the EEOC directly. *See id.* at 22–24. Dantzler does, however,

include a proposed order to transfer his EEOC claim to another jurisdiction. *See* Pl.'s Exs. at 24. The Court accordingly construes Dantzler's action against the EEOC as being a petition for mandamus against that agency to transfer his claim. But Dantzler has failed to make out the EEOC's "clear duty to act." *Regan*, 709 F.2d at 1533.

Dantzler cites no authority for the proposition that a court may compel the transfer of an EEOC charge, and the Court is unaware of any. But courts have held more generally that "the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency." *Martin v. EEOC*, 19 F. Supp. 3d 291, 303 (D.D.C. 2014) (quoting *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002)). How the EEOC decided to handle Dantzler's case thus remains a discretionary act, like those above, for which mandamus will not issue. *Accord id.* at 304 ("The fact that the scope of an EEOC investigation is wholly within the discretion of that agency is dispositive of Martin's mandamus claim, because courts do not have authority under the mandamus statute to order a government official to perform a discretionary duty." (cleaned up)).

Even if Dantzler had established a clear duty to act, it is not apparent that there were "no other adequate remed[ies] available to" him. *Regan*, 709 F.2d at 1533. Over two months before suing, Dantzler received a document entitled "Dismissal and Notice of Rights" from the LCHR. *See* Pl.'s Exs. at 11. That letter stated that although the LCHR found no violations, he could "request EEOC review of th[e] action" or sue his employer directly. *Id.* Dantzler does not allege that he ever pursued these remedies before filing this petition. *Cf. Power v. Barnhart*, 292 F.3d 781, 786–87 (D.C. Cir. 2002) (holding that mandamus was unwarranted in part because "Power

has failed to satisfy his burden of showing that the [administrative remedy] was either unavailable or inadequate").[8]

\*     \*     \*

Because Dantzler has not met the threshold requirements of mandamus under § 1361 as to the Federal Defendants, he has failed to establish subject matter jurisdiction.  *See Am. Hosp. Ass'n*, 812 F.3d at 189.  The Court briefly notes that Dantzler's invocation of the All Writs Act fails as to the Federal Defendants too.  As with the NAACP Defendants, Dantzler provides no independent basis for subject matter jurisdiction.[9]

More, even if the Court construed Dantzler's petitions as raising other claims, they would not survive dismissal.  As with the NAACP Defendants, Dantzler suggests that the Federal Defendants were involved in a conspiracy, but he provides insufficient factual support.  *See, e.g.*, Pl.'s Pet. at 12 (stating Defendants violated his civil rights "by not responding back to plaintiff's letters nor meeting with plaintiff which was motivated by defendants [sic] conspiracy with one

---

[8]  The Federal Defendants plausibly construe Dantzler's petition as suing the EEOC under Title VII of the Civil Rights Act because of his disagreement with how the agency handled his charge.  *See* Fed. Defs.' Mot. at 12–14.  Even if the Court were to construe Dantzler's petition in this way, it would not change the ultimate outcome.  Dantzler has provided no authority to support that he can sue *the EEOC*, alleging discrimination by an employer.  The Court agrees with the Federal Defendants that Title VII's jurisdictional grants do not seem to encompass such relief.  *See* 42 U.S.C. §§ 2000e-5(f)(3), 2000e-6(b), 2000e-16.  More, if Dantzler's petition could be construed as seeking monetary damages, the United States has not waived sovereign immunity and thus Dantzler cannot sue the EEOC and its employees acting in their official capacity for damages.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94, 100 (D.D.C. 2014).

[9]  Dantzler also seemingly invokes the Crime Victims' Rights Act to seek a writ of mandamus.  *See* Pl.'s Pet. 22.  But that statute does not help him here.  *See* 18 U.S.C. § 3771(d)(3) ("If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus.").  He also cites 42 U.S.C. § 10607 (now codified at 34 U.S.C. § 20141) and 42 U.S.C. § 14141 (now codified at 34 U.S.C. § 12601), *see, e.g.*, Pl.'s Pet. at 17–18, but he does not expound on them, and neither statute grants the Court mandamus jurisdiction.

another"); *id.* ("Plaintiff alleges conspiracy to continue to overlook plaintiff's U.S.E.E.O.C. claims . . . within the meaning and intent under the provision of 42 U.S.C. § 1985.").  Even taking as true Dantzler's allegation that Edwards "is coming after him," *id.* at 7, that does not show an *agreement* between the parties, *cf. Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing plaintiff's § 1985 claims "for his failure to allege (beyond conclusory assertions) that there was an agreement or meeting of the minds between any of the defendants to violate his civil rights").

## IV.

In sum, Dantzler has not established the Court's jurisdiction or otherwise shown that he is entitled to relief.  The Court has liberally construed Dantzler's petition and granted him all inferences that stem from it.  But the Court cannot grant Dantzler the relief he seeks and will dismiss his petition.[10]  *Cf. Wightman-Cervantes*, 750 F. Supp. 2d at 81 ("conclud[ing] that Wightman-Cervantes has failed to satisfy his burden and demonstrate that he is entitled to mandamus relief" and explaining that "[a]ccordingly, the Court will dismiss the complaint because it lacks subject matter jurisdiction").

---

[10]  Besides those already mentioned, Dantzler has listed various other statutes throughout his petition.  He offers these with little to no explanation, and none appear to apply to Dantzler's circumstances.  For example, he lists the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, but he does not allege that he ever made a FOIA request or was denied information he sought under that statute.  The Court therefore need not address these extraneous citations.

For these reasons, the Court will grant in part the NAACP and the Federal Defendants' motions to dismiss.[11]  A separate Order will issue.

Dated: July 6, 2021

_____
TREVOR N. McFADDEN, U.S.D.J.

---

[11]  Both the NAACP and Federal Defendants ask this Court to dismiss the petition with prejudice.  *See* NAACP's Mot. at 2; Fed. Defs.' Proposed Order at 1, ECF No. 10-2.  But the Court finds that dismissal without prejudice is more appropriate, given the high standard for the alternative.  *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (cleaned up)); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012) (explaining that "the standard for dismissing a complaint with prejudice is high" and that it "is the exception, not the rule, in federal practice" (cleaned up)).